**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAMONT GRIFFIN (#B-15748), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 15-cv-02313 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CHARLES TRUITT, Warden, Stateville | ) | |
| Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Petitioner Lamont Griffin, a prisoner at Stateville Correctional Center, has filed a *pro se* petition in this Court seeking a writ of habeas corpus under 28 U.S.C. § 2254. With his petition, he challenges his 2007 convictions in the Circuit Court of Cook County for first-degree murder and unlawful use of a weapon by a felon, raising various claims of trial-court error, insufficiency of the evidence, prosecutorial misconduct, and ineffective assistance of counsel. For the reasons stated below, the Court denies the § 2254 petition and declines to issue a certificate of appealability.

**BACKGROUND**[1]

Following a bench trial, Griffin was convicted of first-degree murder and unlawful use of a weapon by a felon, based on the 2004 shooting of Cedrick Nailing. *People v. Griffin*, 2011 IL App (1st) 080654 ¶¶ 4, 9. Griffin was sentenced to life imprisonment. *Id.* ¶ 4.

---

[1] The following facts and procedural background are drawn from the state appellate court decisions in Griffin's case, supplemented by the state court record. *See Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1)) (facts taken from state appellate court decisions are presumptively correct).

## I.     Trial

### A.     State's Case

On April 5, 2004, Tiffany Ryan was talking on a payphone across the street from her apartment building on South State Street in Chicago, Illinois when her boyfriend, Griffin, passed by. *Id.* ¶¶ 9, 10. Griffin asked to whom she was talking, but she refused to tell him; she was talking to another man, the father of her two children. *Id.* ¶ 10. Griffin and Ryan argued as they walked to their apartment. *Id.* They lived with Ryan's father, Cedric Nailing, and Nailing's girlfriend, Phyllis Alcorn, as well as Ryan's children. *Id.* ¶ 9.

Ryan testified at trial that when she and Griffin reached the apartment, Griffin lifted his shirt, exposing what appeared to be a gun, and said, "This is going to your head." *Id.* ¶ 10. Ryan thought he was going to shoot her. (Dkt. No. 19-6 at 114–15.) As they continued arguing in the kitchen, Nailing came from his bedroom, stood between the two, and tried to calm them down. *Griffin*, 2011 IL App (1st) 080654 ¶ 11. Griffin reached around Nailing and hit Ryan in the head. *Id.* Nailing then grabbed Griffin's collar and the two began "tussling." *Id.* ¶ 12. As the tussling continued, Ryan went to her bedroom.[2] *Id.* Meanwhile, Alcorn went back and forth from her own bedroom to the kitchen to check on Nailing. *Id.* Alcorn testified that, after about 10 minutes of Nailing's struggling with Griffin, as she was walking away from the kitchen, she heard Nailing say, "It doesn't have to go this far," followed by a muffled gunshot.[3] *Id.* Ryan testified that, just

---

[2] On cross-examination and through a stipulation to testimony that certain defense witnesses would provide, defense counsel attacked Ryan's credibility by exposing inconsistencies in her testimony concerning whether Griffin punched or slapped her and whether, when she went to her bedroom, she closed the door or left it open. (Dkt. No. 19-6 at 141–45, 149–50, 152–55; Dkt. No. 19-7 at 122–23.)

[3] On cross-examination, Alcorn admitted she smoked crack cocaine on a regular basis from 2000 to 2005, (Dkt. No. 19-6 at 31–34, 57, 61–62), but denied using drugs on the day of the shooting or during the days immediately before and after the shooting. (Dkt. No. 19-6 at 62–64.) During this line of cross-examination, defense counsel objected, at sidebar, that the prosecutor had withheld information about Alcorn's drug use, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), because the prosecutor had

before the gunshot, she heard Nailing say, "Come on man. Don't do it. Ain't worth it." *Id.* After

the gunshot, Griffin ran into Ryan's bedroom and said, "Bitch, I was in love with you." *Id.* ¶ 13.

He then walked down the hall with a gun in his hand and left the apartment. *Id.*

Alcorn found Nailing on the kitchen floor shot in the neck and struggling to breathe, and

she called the police. *Id.* ¶¶ 13, 14. Police Officer Robert Stegmiller responded to the call and

spoke with Ryan, though he did not testify regarding the content of their conversation. (Dkt. No.

19-6 at 172–73.) Two days later, on April 7, 2004, Ryan called the police and alerted them to

Griffin's whereabouts, and he was arrested that day. (Dkt. No. 19-6 at 174–77.)

The shooting rendered Nailing a quadriplegic and he was hospitalized for more than three

months before he died of sepsis on July 22, 2004. *Griffin*, 2011 IL App (1st) 080654 ¶ 14. The

parties stipulated that from June 1 to July 22, 2004, Nailing was in a coma. (Dkt. No. 19-4 at 45–

46; Dkt. No. 19-7 at 6–7.) The parties also stipulated to the medical examiner's autopsy report,

which included the opinion that the manner of death was homicide. (Dkt. No. 19-7 at 7–15.) The

medical examiner testified that the bullet traveled from the front of Nailing's neck to the back, and

from left to right and slightly downward. *Griffin*, 2011 IL App (1st) 080654 ¶ 14.

After the state's last witness testified, the prosecutor sought to introduce a certified copy

of a prior murder conviction of Griffin (Dkt. No. 19-1 at 65), to prove the prior-felony element of

---

mentioned having interviewed Alcorn about her drug use but did not disclose the content of the interview
to defense counsel. (Dkt. No. 19-6 at 50–52.) Defense counsel requested the disclosure of any additional
information about Alcorn's drug use before continuing cross-examination. (Dkt. No. 19-6 at 54.) The
prosecutor explained that the interview in question was a brief conversation he had with Alcorn
immediately before she testified, in which she denied using drugs on the day of the shooting but admitted
using drugs in the past; and the prosecutor told her that if she was asked about her prior drug use to tell
the truth about it. (Dkt. No. 19-6 at 54–55.) The trial judge pointed out that, even before defense counsel
raised the *Brady* objection, counsel had already begun questioning Alcorn about her drug use, showing
that counsel already knew about it, which counsel conceded. (Dkt. No. 19-6 at 52.) After the sidebar
discussion, defense counsel continued to cross-examine Alcorn about her drug use, including whether she
used drugs on the day of the shooting, which she denied. (Dkt. No. 19-6 at 57–65.)

unlawful use of a weapon by a felon ("UUW"). (Dkt. No. 19-6 at 182.) Defense counsel argued that using the prior murder conviction would be unduly prejudicial, suggesting that the state could use Griffin's prior conviction of UUW instead. (Dkt. No. 19-6 at 182–83.) The judge severed the UUW count from the murder count and, noting that the state chose, in its discretion, to predicate the UUW charge on Griffin's prior murder conviction, admitted the prior murder conviction for purposes of the UUW count only. (Dkt. No. 19-6 at 183–87.)

### B.    Motion for directed verdict

After the state rested, Griffin moved for a directed finding of not guilty, arguing that the state failed to prove that he intended to shoot or kill Nailing, or that he pointed a gun at anyone; instead, he claimed that the evidence proved the fatal shot occurred accidentally during the tussle or, at most, proved involuntary manslaughter or second-degree murder. (Dkt. No. 16-7 at 18–21.) In response, the prosecutor argued, among other things: "The testimony is clear [Griffin] armed himself, they were tugging on each other's shirts, and he decides to shoot [Nailing] through the throat. We have met our burden and ask [the court] to deny the motion." (Dkt. No. 19-7 at 22.) Defense counsel responded: "I don't know where the state comes up with the idea that [Griffin] took a gun out and shot [Nailing]. There is not one bit of evidence that he did that." (Dkt. No. 19-7 at 22.) The trial judge denied the motion for a directed verdict. (Dkt. No. 19-7 at 23.)

### C.    Defendant's case

Before Griffin testified, defense counsel asked the trial judge to address a motion *in limine* to bar evidence of Griffin's prior convictions for impeachment purposes. (Dkt. No. 19-7 at 37.) The judge deferred ruling, saying he needed to hear Griffin testify before balancing the probative and prejudicial effects of the prior convictions. (Dkt. No. 19-7 at 37.)

Griffin's version of the shooting differed from that presented in the state's case in the following ways. According to Griffin, although he showed Ryan a gun during their argument, he did so not to threaten Ryan but to indicate he needed to take the gun out of the apartment because Nailing was on electronic home monitoring and the police often visited the apartment to check on Nailing. *Griffin*, 2011 IL App (1st) 080654 ¶ 17. As for the altercation with Nailing, Griffin testified that, after he struck Ryan, Nailing "attacked" Griffin from behind, put his arms around Griffin's neck, and threw Griffin on the couch. *Id.* ¶¶ 18, 19. Nailing was eight inches taller than Griffin and outweighed him by 20 pounds (Nailing was 6'1" and weighed 160 pounds while Griffin was 5'5" and weighed 140 pounds). *Id.* ¶ 18. According to Griffin, as the two struggled, Nailing gained control of the gun and, while holding Griffin around the neck with his left arm, hit Griffin in the head and face. *Id.* As Griffin tried to free himself, Nailing swung his right arm, with the gun in his right hand, and the gun discharged. *Id.* Griffin said that he swung his arm at Nailing's right hand to try to knock the gun away (Dkt. No. 19-7 at 113–14), but he did not say whether his arm made contact with Nailing's hand. Griffin repeatedly stated that the gun was in Nailing's hand when it discharged. (Dkt. No. 19-7 at 53, 56, 106, 112.)

According to Griffin, after the gun discharged, he did not know what had happened but saw Nailing lying on the floor and picked up the gun to get it away from Nailing. *Griffin*, 2011 IL App (1st) 080654 ¶ 19. Griffin told Ryan that he loved her and then, as he passed through the apartment, saw that Nailing was not responsive and called 911. *Id.* Later he gave the gun to a friend. *Id.* A family member of Griffin's testified that, shortly after the shooting, Griffin had a "busted" lip, his nose was bleeding, his eye was swollen, and he had marks on his neck that looked like handprints. *Id.* ¶ 20.

At the beginning of Griffin's cross-examination, defense counsel renewed her concern about the use of Griffin's prior convictions for impeachment purposes, but the judge again deferred ruling, saying he had not yet heard Griffin's entire testimony and that, in any event, the prosecutor was not permitted to use the prior convictions on cross-examination. (Dkt. No. 19-7 at 58.)

During Griffin's cross-examination, as the prosecutor was preparing to introduce four color booking photographs of Griffin to show that he had no visible injuries a couple of days after the incident (Dkt. No. 19-4 at 32–35), defense counsel objected, claiming the prosecutor had failed to disclose the photos, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Dkt. No. 19-7 at 92–94.) The judge barred the prosecutor from using the photos on cross-examination and gave defense counsel until the state's rebuttal case to investigate the photos. (Dkt. No. 19-7 at 95, 124.)

Before Griffin's redirect examination, defense counsel again renewed her concern about the use of Griffin's prior convictions for impeachment purposes. (Dkt. No. 19-7 at 95–96.) The judge ruled that the state could introduce the prior murder conviction in rebuttal, as relevant to Griffin's credibility, concluding that the conviction was more probative than prejudicial; the judge further confirmed he would not consider the prior conviction as propensity evidence. (Dkt. No. 19-7 at 97 –98.)

Following Griffin's redirect examination, defense counsel sought leave from the court to probe whether Nailing had an aggressive character and whether Griffin was fearful of Nailing, to support the theory that Griffin acted in self-defense. (Dkt. No. 19-7 at 107–08). Although Griffin testified that he "was defending himself during the course of the struggle," the judge concluded that "[t]he actions that caused the death of Mr. Nailing according to [Griffin] was that Mr. Nailing shot himself. That is not self-defense." (Dkt. No. 19-7 at 109.) The judge went on to elaborate:

> The court's ruling is that what caused Mr. Nailing's death, according to [Griffin], was that Mr. Nailing shot himself during the course of this struggle.

6

[Griffin] was not acting in self-defense. I mean, he didn't use the gun in self-defense . . . So either, A, during the course of the struggle, Mr. Nailing shot himself, or [B], he was accidentally shot. Obviously he didn't intentionally shoot himself, but he accidentally shot himself during the course of these events.

[Griffin] did not use this gun, according to his own testimony, in self-defense. He did not use deadly force in self-defense. That is clear from his testimony. He did not use deadly force in his own defense. So any evidence of [Nailing's] character would not be relevant because there is no issue of self-defense. According to [Griffin] it was an accident during the course of the struggle. So the court will not allow that evidence [of Nailing's character and of Griffin's fear of Nailing] in.

(Dkt. No. 19-7 at 110–11.)

The judge nonetheless allowed defense counsel to make an offer of proof that Nailing's sister would testify that Nailing struck her in 1985; that Nailing was convicted of aggravated battery in 1992; that a protective order issued against him in January of 1992 but later dismissed; and that Griffin would have testified that Nailing threatened Griffin on a prior occasion with a butcher knife and that Griffin thus feared him. (Dkt. No. 19-7 at 111, 115–18, 120–21). The judge then reiterated his ruling that evidence of Nailing's character was inadmissible because, based on Griffin's testimony, "this is obviously not a self-defense case." (Dkt. No. 19-7 at 119–21.)

### D. State's rebuttal and closing arguments

During the state's rebuttal case, the parties stipulated to the admission of Griffin's booking photos and his prior murder conviction (as relevant to Griffin's credibility). (Dkt. No. 19-7 at 128–29.)

During closing arguments, defense counsel claimed, among other things, that Alcorn was not credible because of her drug use. (Dkt. No. 19-7 at 139.) Defense counsel also argued that Griffin acted in self-defense by trying to knock the gun out of Nailing's hand, and that he should be found not guilty or, at most, guilty of involuntary manslaughter or second-degree murder. (Dkt. No. 19-7 at 146–47, 150–51.)

### E.    Findings of fact and verdict

At the outset of his findings, the trial judge acknowledged that evidence that had been admitted for a limited purpose (such as Griffin's prior murder conviction) would be considered for that limited purpose only. (Dkt. No. 19-7 at 163.) He then emphasized that Griffin had testified that the gun was not in his hand when it discharged. (Dkt. No. 19-7 at 168–69.) Concerning Alcorn's testimony, the judge noted that defense counsel had "delved into [Alcorn's drug use] at great length" and used that information to attack her credibility and her ability to recall events, but the judge ultimately found that Alcorn's drug use did not undermine her credibility because her testimony was largely corroborated by Ryan and by Griffin himself. (Dkt. No. 19-7 at 169–70.) The judge found Ryan credible too (Dkt. No. 19-7 at 169–71), and found Griffin's account "in direct conflict with the physical evidence and the circumstantial evidence in this case." (Dkt. No. 19-7 at 169–71.) The judge found Griffin guilty of first-degree murder and UUW (two counts, based on possession of the gun and its ammunition). (Dkt. No. 19-7 at 173–74.)

### F.    Motion for new trial and sentencing

Griffin moved for a new trial arguing, among other things: (a) that the trial judge erred in (i) denying his motion for a directed verdict; (ii) delaying his ruling on Griffin's motion *in limine* to bar evidence of Griffin's prior convictions; and (iii) rejecting Griffin's self-defense theory; and (b) that the prosecutor, in violation of *Brady*, failed to disclose evidence of Alcorn's drug use and Griffin's booking photos. (Dkt. No. 19-1 at 136–40.) The judge denied the motion summarily, standing by his previous rulings. (Dkt. No. 19-7 at 186.) Thereafter, the judge sentenced Griffin to a term of life imprisonment for first-degree murder and seven years' imprisonment (to be served concurrently) for each count of UUW. (Dkt. No. 19-7 at 196.)

## II.      Direct appeal

On direct appeal, Griffin argued: (1) the trial judge abused his discretion in delaying ruling on Griffin's motion *in limine* to bar use of Griffin's prior murder conviction for impeachment purposes; (2) the trial judge erred in precluding evidence of Nailing's violent character and in refusing to consider alternative findings of self-defense or second-degree murder; and (3) one of the UUW convictions should be vacated because both UUW convictions were predicated on a single act of possessing a gun and its ammunition. (Dkt. No. 19-8.) The Illinois Appellate Court affirmed the first-degree murder conviction but vacated one of the UUW convictions. *Griffin*, 2011 IL App (1st) 080654 ¶ 5. That decision was vacated, pursuant to a supervisory order of the Illinois Supreme Court directing the appellate court to reconsider the judgment in light of *Illinois v. Mullins*, 949 N.E.2d 611 (2011). After reconsideration, the Illinois appellate court again affirmed the first-degree murder conviction and vacated one of the UUW convictions. *Id.* ¶ 49.

The Illinois Supreme Court denied Griffin's petition for leave to appeal ("PLA"), *Illinois v. Griffin*, 968 N.E.2d 85 (2012) (table), and Griffin unsuccessfully sought certiorari in the United States Supreme Court. *Griffin v. Illinois*, 133 S. Ct. 345 (2012).

## III.      First petition for postconviction relief

In 2012, Griffin filed a *pro se* petition for postconviction relief under the Illinois Post Conviction Hearing Act, 725 ILCS 5/122-1. (Dkt. No. 19-21 at 43–88.) He raised ten issues, claiming trial-court errors, insufficiency of the evidence, prosecutorial misconduct, and ineffective assistance of trial and appellate counsel. The trial court dismissed the petition, finding the issues "frivolous" and "patently without merit." *People v. Griffin*, No. 04-CR-20163 (December 7, 2012). (Dkt. No. 19-21 at 109–23.)

On appeal, appointed counsel moved to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), arguing that an appeal would lack arguable merit. (Dkt. No. 19-23.) Griffin filed a response. (Dkt. No. 19-24.) The Illinois Appellate Court agreed with counsel's conclusion, granted the motion to withdraw, and affirmed the judgment dismissing Griffin's postconviction petition. *People v. Griffin*, 2014 Il App (1st) 130362-U. (Dkt. No. 19-25.) The Illinois Supreme Court denied Griffin's PLA. *Illinois v. Griffin*, 21 N.E.3d 716 (2014) (table).

### IV.     Second petition for postconviction relief

In 2016, Griffin filed a *pro se* motion for leave to file a successive petition for postconviction relief in the state trial court. (Dkt. No. 45-2 at 29–134.) He argued: (1) prosecutorial misconduct, in violation of *Brady*, based on the state's failure to turn over a police report showing that, in April of 2004, neither Ryan nor Alcorn told the police that Nailing pleaded for his life immediately before he was shot; (2) prosecutorial misconduct based on the state allegedly presenting testimony from Officers Stegmiller and Seinitz that Ryan and Alcorn told the officers that Nailing pleaded for his life before he was shot; (3) prosecutorial misconduct, in violation of *Brady*, based on the state's failure to disclose that Nailing was not in a coma before he died; and (4) ineffective assistance of trial counsel for failing to discover the police report and Nailing's medical records, and in stipulating that Nailing was in a coma and stipulating to Nailing's autopsy report. (Dkt. No. 45-2 at 29–42.) The trial court denied the motion, finding that Griffin failed to meet the cause and prejudice test for filing a successive petition under 725 ILCS 5/122-1(f). (Dkt. No. 45-2 at 136; Dkt. No. 45-3 at 9.)

On appeal, appointed counsel moved to withdraw under *Finley*, arguing that an appeal would lack arguable merit. (Dkt. No. 45-4.) Griffin filed a response. (Dkt. No. 45-5.) The Illinois Appellate Court agreed with counsel's conclusion, granted the motion to withdraw, and affirmed

the judgment dismissing Griffin's motion seeking leave to file a successive postconviction petition. *People v. Griffin*, No. 1-16-2347 (Ill. App. Ct. Feb. 22, 2019). (Dkt. No. 45-1.) The Illinois Supreme Court denied Griffin's PLA. *Illinois v. Griffin*, 124 N.E.3d 508 (2019) (table).

## DISCUSSION

In his habeas corpus petition before this Court, Griffin raises a total of eighteen claims.[4] (Dkt. No. 43.) Specifically, Griffin asserts the following claims:

1. The trial judge abused his discretion in delaying ruling on Griffin's motion *in limine* to exclude Griffin's prior murder conviction, violating Griffin's rights to a fair trial. (Dkt. No. 43 at 2.)

2. The trial judge violated Griffin's rights to fair trial by barring evidence of Nailing's violent character and refusing to consider a finding of accident, self-defense, involuntary manslaughter, or second-degree murder. (Dkt. No. 43 at 2–3.)

3. The evidence was insufficient to prove first-degree murder and the trial judge erred in ignoring evidence that showed the shooting was accidental. (Dkt. No. 43 at 3–4.)

4. Appellate counsel provided ineffective assistance by failing to argue insufficiency of the evidence and failure to argue ineffectiveness of trial counsel. (Dkt. No. 43 at 4–5.)

5. The trial judge deprived Griffin of his rights to a fair trial by excluding evidence supporting Griffin's self-defense theory. (Dkt. No. 43 at 5.)

---

[4] Griffin originally filed his habeas corpus petition in March of 2015, raising twelve claims. (Dkt. Nos. 1, 6.) In June 2016, he successfully moved this Court to stay the petition while he sought leave to file a successive postconviction petition in state court. (Dkt. Nos. 25, 26.) Approximately three years later, in July 2019, at Griffin's request, this Court lifted the stay and granted Griffin leave to file an amended habeas petition. (Dkt. No. 33.) On July 21, 2020, Griffin submitted an amended petition, setting forth eighteen claims for relief (the original claims plus additional ones concerning the denial of his motion for leave to file a successive postconviction petition). (Dkt. No. 43.) This Court treats the amended petition "as the operative habeas petition in this matter." (Dkt. No. 44.) Respondent filed a response to Griffin's amended petition (Dkt. No. 46), and Griffin filed a reply. (Dkt. No. 49.)

6. The trial judge showed bias against Griffin and pronounced him guilty before the evidence was complete, where the judge ruled at sidebar that because of an absence of evidence of self-defense, Griffin could not introduce evidence of Nailing's violent character. (Dkt. No. 43 at 5–6.)

7. The trial judge violated Griffin's rights to a fair trial by admitting Ryan's testimony that Griffin threatened her, where the threat was not linked to Nailing. (Dkt. No. 43 at 6.)

8. The trial judge wrongly admitted, under the dying-declaration exception to the hearsay rule, Ryan's and Alcorn's testimony that Nailing pleaded for his life immediately before he was shot. (Dkt. No. 43 at 6–7.)

9. That his trial counsel provided ineffective assistance by failing to challenge, through a contemporaneous objection or in Griffin's motion for a new trial, the admission of Ryan's testimony that Griffin threatened her and the admission of Ryan's and Alcorn's testimony that Nailing pleaded for his life before he was shot; and that his appellate counsel provided ineffective assistance by failing to argue the ineffectiveness of trial counsel. (Dkt. No. 43 at 7.)

10. Prosecutorial misconduct, in violation of *Brady*, based on the state's failure to disclose information about Alcorn's drug use and Griffin's booking photos. (Dkt. No. 43 at 8.)

11. Prosecutorial misconduct based on the state arguing, without evidentiary support, that Griffin took out a gun and shot Nailing, violating Griffin's rights to a fair trial. (Dkt. No. 43 at 8–9.)

12. The judge erred in denying Griffin's motion for a directed verdict; trial counsel was ineffective for filing to preserve Griffin's rights concerning denial of his directed-

verdict motion by failing to renew the motion at the close of the evidence; and appellate counsel was ineffective for failing to argue ineffectiveness of trial counsel and for failing to argue the judge erred in denying the directed-verdict motion. (Dkt. No. 43 at 9.)

13. The judge erred in denying Griffin's motion for leave to file a successive postconviction petition orally rather than in writing and erred in failing to accept Griffin's supporting affidavit as true. (Dkt. No. 43 at 9–10.)

14. Appellate counsel was ineffective based on the filing of a *Finley* motion concerning Griffin's appeal from his request for leave to file a successive postconviction petition, where counsel acknowledged the existence of newly-discovered evidence that Nailing was not in a coma but declined to raise it on appeal, and where counsel had a conflict of interest because the same counsel filed a *Finley* motion concerning Griffin's appeal from the denial of his first postconviction petition. (Dkt. No. 43 at 10–11.)

15. Prosecutorial misconduct, in violation of *Brady*, based on the failure to disclose a police report that showed neither Ryan nor Alcorn said that Nailing had pleaded for his life before he was shot. (Dkt. No. 43 at 13–15.)

16. Prosecutorial misconduct based on allegedly presenting testimony of Officers Stegmiller and Seinitz that Ryan and Alcorn told the officers that Nailing had pleaded for his life before he was shot, when the prosecutor knew or should have known the officers' purported testimony was false. (Dkt. No. 43 at 16, 19–20 (the pages corresponding to this claim are out of order).)

17. Prosecutorial misconduct, in violation of *Brady*, based on the failure to disclose that Nailing was not in a coma before he died. (Dkt. No. 43 at 17–18, 16 (the pages corresponding to this claim are out of order).)

18. Trial counsel provided ineffective assistance in failing to discover the police report showing that, in April of 2004, neither Ryan nor Alcorn told the police that Nailing had pleaded for his life before he was shot and for failing to discover the medical records showing that Nailing was not in a coma before he died. (Dkt. No. 43 at 21–23.)

As explained below, however, all the claims are unavailing because they either fail to satisfy 28 U.S.C. § 2254(d)'s high standard for relief or are procedurally defaulted from federal habeas review.

## I.     Standards for § 2254(d) relief and for procedural default

A federal court may grant habeas relief following an adjudication on the merits in state court only if the decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Armfield v. Niklaus*, 985 F.3d 536, 540–41 (7th Cir. 2021).

A state prisoner procedurally defaults a federal claim if he fails to "fairly present" it "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). Procedural default can also occur if the state court rejects a federal claim based on a state procedural rule "that is both independent of the federal question and adequate to support the judgment." *Id*. (quotation marks omitted); *see also Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir.

2017); *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). "Procedural default may be excused . . . where the petitioner demonstrates either: (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Thomas*, 822 F.3d at 386 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

## II. Trial court rulings (Claims 1, 2, 3, 4, 5, 6, 7, 8, 12(a), and 13)

Griffin claims that the trial court erred in various evidentiary and other rulings. The Court addresses each in turn below.

### A. Claim 1—Delayed ruling on motion *in limine*

Griffin argues that the judge abused his discretion in delaying ruling on Griffin's motion *in limine* until Griffin's redirect examination, compromising Griffin's ability to make an informed decision about whether to testify. (Dkt. No. 43 at 2; Dkt. No. 49 at 10.) On direct appeal, the Illinois Appellate Court concluded that the trial judge abused his discretion but that the error was harmless. *Griffin*, 2011 IL App (1st) 080654 ¶¶ 31–34.

Griffin's claim on federal habeas review is meritless because he cannot show that the delayed ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (internal citations omitted) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, 'it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); *Fayemi v. Ruskin*, 966 F.3d 591, 594 (7th Cir. 2020) ("only decisions of the Supreme Court matter on collateral review of state-court judgments"). "[T]here is no clearly established federal law that requires a trial judge to decide whether a defendant's prior convictions are admissible before he testifies." *See Rials v. Harrington*, No. 12-C-05342, 2013 WL 6633191, at *7 (N.D. Ill. Dec. 16,

2013), citing *Ohler v. United States*, 529 U.S. 753 (2000); *Luce v. United States*, 469 U.S. 38 (1984); *accord Towers v. Lawrence*, No. 17-cv-7481, 2019 WL 4166869, at *7 (N.D. Ill. Sept. 3, 2019) (same); *Taylor v. Nicholson*, No. 17-C-1552, 2018 WL 4052172, at *5 (N.D. Ill. Aug. 24, 2018) (same); *Weatherspoon v. Harrington*, No. 13-C-8621, 2014 WL 4771853, at *10 (N.D. Ill. Sept. 24, 2014) (same). Griffin's claim thus fails.

### B. Claims 2, 5, and 6—Evidence of Nailing's character

Griffin next argues that the trial judge: (1) erred in refusing to admit evidence of Nailing's violent character to show he was the aggressor, depriving Griffin of his right to present the defense of self-defense; (2) denied Griffin a fair and impartial trial by rejecting his self-defense theory before the evidence was closed; and (3) denied Griffin a fair and impartial trial in refusing to consider alternative findings of accident, self-defense, involuntary manslaughter, or second-degree murder.

On direct appeal, the Illinois Appellate Court concluded that: (1) the trial judge did not err in precluding evidence of Nailing's violent character where Griffin did not present evidence that he acted in self-defense and where, on the contrary, Griffin testified that Nailing took control of the gun and shot himself; (2) the judge did not prejudge Griffin's theory of self-defense when, during the discussion of whether to admit evidence of Nailing's character, the judge concluded that a necessary prerequisite—evidence of self-defense—was lacking; and (3) nothing in the record suggested the judge refused to consider alternatives to finding Griffin guilty of first-degree murder. *Griffin*, 2011 IL App (1st) 080654 ¶¶ 39–45. On review of the same claims in connection with Griffin's first postconviction petition, the trial judge rejected those claims for the same reasons as did the appellate court (*see* Dkt. No. 19-21 at 114, 117), and the Illinois Appellate Court affirmed the denial of Griffin's first postconviction petition summarily. *Griffin*, 2014 Il App (1st)

130362-U. (Dkt. No. 19-25.) Those courts neither unreasonably applied federal law nor unreasonably determined the facts in light of the evidence at trial.

First, the trial judge properly barred evidence of Nailing's violent character given that there was no evidence that Griffin shot Nailing in self-defense. The Sixth Amendment right to present a defense "is not unlimited and may 'bow to accommodate other legitimate interests in the criminal trial process.'" *Horton v. Litscher*, 427 F.3d 498, 504 (7th Cir. 2005) (quoting *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973)). "[R]ules 'designed to assure both fairness and reliability in the ascertainment of guilt and innocence' . . . do not abridge an accused's right to present a defense so long as they are not 'arbitrary or disproportionate to the purposes they are designed to serve.'" *Horton*, 427 F.3d at 503 (quoting *Chambers,* 410 U.S. at 302, and *Rock v. Arkansas,* 483 U.S. 44, 56 (1987)). One such rule in Illinois is that "a defendant may not introduce evidence of the victim's character until some evidence has been presented that the victim was, or appeared to be, the assailant, and that the defendant therefore acted in self-defense." *People v. Lynch*, 470 N.E.2d 1018, 1022 (1984); *see also Illinois v. Figueroa*, 886 N.E.2d 455, 469 (Ill. App. 2008) ("[I]n any *Lynch* situation, we must first decide whether the defendant was entitled to introduce *Lynch* evidence [of the victim's prior violence] at all, that is, whether [the evidence] properly raised a theory of self-defense"). The Illinois Appellate Court relied on this rule and the lack of evidence that Griffin shot Nailing in self-defense in upholding the trial judge's decision barring evidence of Nailing's violent character. *Griffin*, 2011 IL App (1st) 080654 ¶¶ 39-40.

Griffin makes no argument that the *Lynch* rule is arbitrary or disproportionate to the purpose it is designed to serve, nor can he show that he satisfied the rule because he denied that he was in control of the gun when it discharged. *See DeJonge v. Burton*, No. 18-2339, 2020 WL 2533574, at *5–6 (6th Cir. Apr. 20, 2020) (where petitioner did not claim self-defense, trial court

properly barred admission of victim's violent character under state evidentiary rule requiring evidence of self-defense as prerequisite for admission of such character evidence; no violation of petitioner's constitutional right to present a defense); *cf. Owens v. Bartow*, No. 08-C-0049, 2008 WL 4693539, at *6 (E.D. Wisc. Oct. 23, 2008) (exclusion of testimony concerning victim's violent character, under state statute allowing exclusion of cumulative evidence, did not infringe on petitioner's right to present a self-defense theory). Accordingly, Griffin cannot show that barring evidence of Nailing's violent character violated clearly established federal law or reflected an unreasonable determination of the facts.

Second, the trial judge did not deprive Griffin of a fair trial by purportedly prejudging Griffin's self-defense theory. "[T]he Due Process Clause clearly requires a 'fair trial in a fair tribuna[l]' before a judge with no actual bias against the defendant." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (citation omitted). But here, the record does not support Griffin's claim of bias because, as the Illinois Appellate Court acknowledged, *Griffin*, 2011 IL App (1st) 080654 ¶ 43, the trial judge was required under *Lynch* to determine—before the evidence was closed—whether the theory of self-defense had been properly raised to justify admitting evidence of Nailing's violent character. *Lynch*, 470 N.E.2d at 1022; *see also Figueroa*, 886 N.E.2d at 469. Fulfilling his duty under *Lynch*, the judge considered whether there was evidence of self-defense and concluded that Griffin denied controlling the gun at the time of the fatal act—when the gun was discharged— and that Griffin instead maintained that Nailing was holding the gun when it discharged. (Dkt. No. 19-7 at 109–11, 121.) The judge thus did not improperly prejudge Griffin's self-defense theory but rather properly contemporaneously considered, as he was required to do under *Lynch*, whether the factual predicate had been satisfied for admitting evidence of Nailing's violent character and properly concluded that it had not.

Third, the Illinois Appellate Court correctly concluded that the record did not support Griffin's claim that the judge refused to consider Griffin's various theories of defense. *Griffin*, 2011 IL App (1st) 080654 ¶ 42. After both sides rested, and as the judge began laying out his findings of fact, he stated that he had observed the witnesses and assessed their credibility, "read and reread the transcript of the testimony of the witnesses," listened to and considered the arguments of counsel, and assessed the properly admitted evidence. (Dkt. No. 19-7 at 163.) By acknowledging the evidence and the arguments of counsel—where defense counsel had argued accident, self-defense, involuntary manslaughter, and second-degree murder (Dkt. No. 19-6 at 16; Dkt. No. 16-7 at 18–21, 146–47, 150–51)—the judge indicated that he had considered all of Griffin's theories.[5] Griffin thus cannot show that the appellate court, in rejecting his judicial-bias claim, unreasonably applied federal law or unreasonably determined the facts in light of the evidence at trial.

Accordingly, these claims fail as well.

### C. Claims 3 and 12(a)—Sufficiency of the evidence of first-degree murder

Griffin also argues that the evidence was insufficient to prove first-degree murder, that the trial judge ignored evidence showing that the shooting was accidental, and that the judge erred in denying his motion for a directed verdict. On review of Griffin's first postconviction petition, the judge explained that Griffin had failed to present credible evidence that the shooting was an accident. (Dkt. No. 19-21 at 112). The Illinois Appellate Court affirmed the denial of Griffin's first

---

[5] Concerning accident and involuntary manslaughter, Griffin failed to argue them on direct appeal or in his first postconviction petition, and so Griffin procedurally defaulted those claims. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). Griffin makes no argument that his procedural default is excused by cause and actual prejudice, or on the ground that failure to address the claims would result in a fundamental miscarriage of justice. *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016). In any event, as explained above, the record shows that the trial judge in fact considered these theories along with the other defense theories.

postconviction petition summarily. *Griffin*, 2014 IL App (1st) 130362-U. (Dkt. No. 19-25.) Because the appellate court did not provide a rationale concerning Griffin's sufficiency claims, this Court looks to the trial court's rationale. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").[6]

"The applicable Supreme Court precedent regarding the sufficiency of the evidence is well established: 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Saxon v. Lashbrook*, 873 F.3d 982, 987–88 (7th Cir. 2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in *Jackson*). Habeas corpus review of a *Jackson* claim involves two levels of judicial deference: the state appellate court determines whether any rational trier of fact could have found the evidence sufficient, and the federal court may overturn the appellate court's conclusion only if it was objectively unreasonable. *Id.* (citing *Coleman v. Johnson*, 566 U.S. 650, 651 (2012)). Circumstantial evidence alone can support a conviction. *United States v. Reyes*, 270 F.3d 1158, 1169 (7th Cir. 2001) (internal citations omitted) (circumstantial evidence is of equal probative value to direct evidence and may be the sole support

---

[6] Respondent asserts that Griffin's sufficiency claims "are arguably defaulted" (Dkt. No. 46 at 20), because, in Griffin's response to appellate counsel's *Finley* motion (Dkt. No. 19-24), Griffin did not address all the claims he had raised in his postconviction petition (including his sufficiency claims) in detail. In fact, Griffin's response to counsel's *Finley* motion, Griffin focused on certain arguments that counsel had made but, concerning the other claims that Griffin had raised in his postconviction petition, he said, "[Griffin] does not waive the arguments raised in [his] *pro se* [postconviction] petition and would respectfully request this court to rule on those claims as well." (Dkt. No. 19-24 at 11.) The appellate court, in granting the *Finley* motion and affirming the judgment of the trial court, said it had "carefully review[ed]" the record in light of counsel's brief and [Griffin's] response. (Dkt. No. 19-25 at 2.) Where Respondent has identified no authority holding that a petitioner defaults claims under circumstances such as these, this Court declines to conclude the claims are defaulted. In any event, for reasons explained below the claims lack merit.

for a conviction); *United States ex rel. Green v. Greer*, 667 F.2d 585, 587 n.3 (7th Cir. 1981) (citing *Jackson*, 443 U.S. at 324–25) ("The *Jackson* Court recognized that circumstantial evidence could support a guilty verdict.")

"[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). On habeas corpus review, the federal court "cannot choose the evidence it prefers to emphasize or make its own credibility determinations." *Ford v. Ahitow*, 104 F.3d 926, 939 (7th Cir. 1997). A state court's factual determinations are "presumed to be correct," and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Under 28 U.S.C. § 2254(d)(2), a state court's decision involves an "unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Morgan v. Hardy*, 662 F.3d 790, 801 (7th Cir. 2011). And here, Griffin cannot show that the Illinois courts misapplied *Jackson* or unreasonably determined the facts.

The trial judge concluded that Griffin committed first-degree murder based on the following findings: Griffin brought a gun to the apartment and threatened Ryan with it; Nailing tried to make peace between Griffin and Ryan; Griffin's account of the altercation was not credible and his story about how the gun discharged was inconsistent with the trajectory of the bullet; Nailing pleaded for his life immediately before he was shot; Griffin was seen holding the gun shortly after the shooting; and Griffin disposed of the gun after the incident. (Dkt. No. 19-7 at 166–69, 171–73.) That evidence was sufficient to support the conviction.[7] *See United States ex rel. Illgen v. Washington*, No. 93-C-1648, 1994 WL 124887, at *4–5 (N.D. Ill. Apr. 8, 1994) (evidence

---

[7] The evidence was also sufficient to support the trial judge's denial of Griffin's motion for a directed verdict because the evidentiary basis for the judge's ultimate findings had been presented by the close of the state's case.

21

was sufficient to prove husband murdered wife where, despite husband's testimony (as sole eyewitness) that the shooting was an accident, and despite testimony from a pathologist that it was possible the victim was accidentally shot when she leaned over to take the gun from petitioner, the couple's two daughters testified that they heard the victim say, "Don't point that gun at me," immediately before the shooting; petitioner was standing in front of the victim holding the gun shortly after the shooting; and ballistics evidence suggested the shooting was not accidental); *see also Jackson v. Washington*, No. 98-C-7927, 1999 WL 674750, at *2–3 (N.D. Ill. Aug. 23, 1999) (despite testimony from two defense witnesses that gun discharged accidentally during "tussle" between petitioner and his son, evidence from other witnesses that petitioner said he would shoot victim and that petitioner fired single shot at victim was sufficient to prove attempted first-degree murder); *United States ex rel. Brooks v. Washington*, 824 F. Supp. 143, 144–46 (N.D. Ill. 1993) (evidence that petitioner was angry and carried a gun to girlfriend's apartment, that petitioner was in control of the gun when it discharged, and that petitioner fled the scene and disposed of the gun was sufficient to support murder conviction despite petitioner's testimony that he was not in control of the gun and that the shooting occurred accidentally; court declined to second-guess trial judge's rejection of petitioner's account as inaccurate).

In short, "[Griffin's] ability to fashion an innocent explanation of what happened [when Nailing was shot] does not alter the fact that a rational factfinder, viewing the evidence in the light most favorable to the state, could have found him guilty beyond a reasonable doubt." *Garlington v. O'Leary*, 879 F.2d 277, 285 (7th Cir. 1989). Accordingly, the trial court neither unreasonably applied federal law nor unreasonably determined the facts in light of the evidence at trial. Griffin's sufficiency claims therefore fail.

### D.    Claim 7—Ryan's testimony that Griffin threatened her

Ryan testified that when she and Griffin arrived at the apartment, Griffin showed her a gun and said, "This is going to your head." *Griffin*, 2011 IL App (1st) 080654 ¶ 10. Griffin claims, as he did in his first postconviction petition, that the trial judge erred in admitting Ryan's testimony, depriving him of his due process rights to a fair trial. In denying Griffin's first postconviction petition, the judge concluded that Ryan's testimony established that Griffin was in possession of a weapon and that the state did not attempt to use the testimony improperly to show criminal intent toward Nailing. (Dkt. No. 19-21 at 114–15.) The Illinois Appellate Court affirmed the denial of Griffin's first postconviction petition summarily. *Griffin*, 2014 Il App (1st) 130362-U (Dkt. No. 19-25.) This Court thus looks to the trial court's rationale. *Wilson*, 138 S. Ct. at 1192.

State-court evidentiary rulings "are normally not subject to habeas review." *Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001). "Absent a showing that the admission of the evidence violated a specific constitutional guarantee, a federal court can issue a writ of habeas corpus on the basis of a state court evidentiary ruling only when that ruling violated the defendant's rights to due process by denying him a fundamentally fair trial." *Brown v. Watters*, 599 F.3d 602, 616 (7th Cir. 2010). To warrant relief, the error would have to produce a "significant likelihood that an innocent person has been convicted." *Howard v. O'Sullivan*, 185 F.3d 721, 723–24 (7th Cir. 1999). "If the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be excluded; and if it is not probative, it will be hard to show how the defendant was hurt by its admission." *Watkins v. Meloy*, 95 F.3d 4, 7 (7th Cir. 1996).

Here, Ryan's testimony that Griffin threatened her with a gun was probative of his possession of the murder weapon and his angry and violent state of mind. *See* Ill. R. Evid. 404(b) (evidence of "other crimes, wrongs, or acts" admissible for purposes other than to prove propensity

to commit a crime, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"); *Illinois v. Kimbrough*, 485 N.E.2d 1292, 1296 (Ill. App. Ct. 1985) (evidence of other crimes or unlawful conduct is admissible if relevant to prove, *e.g.*, defendant's state of mind, absence of an innocent frame of mind, identification of weapon used in crime, and opportunity); *accord Illinois v. Tolbert*, 753 N.E.2d 1193, 1197–98 (Ill. App. Ct. 2001); *see also Illinois v. Williams*, 653 N.E.2d 899, 906 (Ill. App. Ct. 1995) (evidence of threat relevant to show defendant's state of mind). Because Ryan's testimony about Griffin possessing a gun and threatening her with it was probative of Griffin's state of mind and that he had the means to commit the murder, Griffin cannot show admission of her testimony violated his due process rights to a fair trial. The trial court neither unreasonably applied federal law nor unreasonably determined the facts in light of the evidence at trial.

### E.       Claim 8—Nailing's pleas for his life

Ryan testified that immediately before Nailing was shot, she heard him say, apparently to Griffin, "Come on man. Don't do it. Ain't worth it," and Alcorn testified she heard Nailing say, "It doesn't have to go this far." Griffin claims, as he did in his first postconviction petition, that Nailing's statements were wrongly admitted as dying declarations, *see Illinois v. Georgakapoulos*, 708 N.E.2d 1196, 1203–04 (Ill. App. Ct. 1999), violating his due process rights to a fair trial and his confrontation rights under the Sixth Amendment to the United States Constitution. (Dkt. No. 19-21 at 63–65.)

The trial court, in denying Griffin's postconviction petition, concluded that the record did not show the statements were admitted under the dying-declaration exception and that, in any event, the statements were admissible under the excited-utterance exception. *See Illinois v. Gacho*, 522 N.E.2d 1146, 1155 (Ill. App. Ct. 1988); (Dkt. No. 19-21 at 115–17.) The Illinois Appellate

Court affirmed the denial of Griffin's first postconviction petition summarily. *Griffin*, 2014 Il App (1st) 130362-U. (Dkt. 19-25.) Thus, this Court again looks to the trial court's rationale. *Wilson*, 138 S. Ct. at 1192.

Griffin cannot show that the state court unreasonably applied federal law or unreasonably determined the facts in light of the evidence at trial. First, Griffin does not challenge the trial court's conclusion that the record fails to show the statements were admitted as dying declarations. Because Griffin did not object at trial to the admission of Nailing's statements, the basis for their admission was not discussed, and so Griffin's argument that they were admitted under the dying-declaration exception is purely speculative. Second, Griffin does not challenge the trial court's conclusion that the statements were admissible as excited utterances. Even if Griffin had challenged that conclusion, a challenge to a state court's interpretation of state law is not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Earls v. McCaughtry*, 379 F.3d 489, 495 (7th Cir. 2004) (a federal habeas court has no authority to "second-guess state courts in interpreting state law"). In any event, the trial court properly concluded that Nailing's statements qualified as excited utterances where the evidence supported findings that: (1) the circumstances were sufficiently startling to produce a spontaneous, unreflective statement (Griffin produced a gun during his struggle with Nailing); (2) the statements related to the circumstances (Nailing pleaded for Griffin not to shoot him); and (3) there was an absence of time to fabricate (Nailing uttered the statements immediately before he was shot). *See Gacho*, 522 N.E.2d at 1155; *Illinois v. Simon*, 953 N.E.2d 1, 24 (Ill. App. Ct. 2011) ("Being threatened with a gun could be a sufficiently startling event to produce a spontaneous statement.").

The trial court did not address the constitutional aspects of Griffin's claim, ruling only on the evidentiary aspects. When a state court did not reach a federal constitutional issue, "the claim

is reviewed *de novo*." *Cone v. Bell*, 556 U.S. 449, 472 (2009). And when no state court has squarely addressed the merits of a habeas claim, "we review the claim under the pre-AEDPA [Antiterrorism and Effective Death Penalty Act of 1996] standard of 28 U.S.C. § 2243, under which we 'dispose of the matter as law and justice require.'" *Toliver v. Pollard*, 688 F.3d 853, 859 (7th Cir. 2012), quoting *Morales v. Johnson*, 659 F.3d 588, 599 (7th Cir. 2011); *see also Aleman v. Sternes*, 320 F.3d 687, 690 (2003) ("[I]f the state judiciary did not address the constitutional claim, despite an opportunity to do so[,] then [28 U.S.C.] § 2254(d) no longer applies. A prisoner still must establish an entitlement to the relief he seeks, and it is § 2254(a), not § 2254(d), that sets the standard."). Griffin cannot satisfy his burden because he cannot show that the admission of Nailing's statements, whether as excited utterances or dying declarations, violated federal law.

First, admission of the testimony did not violate Griffin's due process rights to a fair trial. *See Willingham v. Bauman*, No. 20-1017, 2020 WL 3791943, at *3 (6th Cir. Apr. 22, 2020) (citing *Desai v. Booker*, 732 F.3d 628, 630–31 (6th Cir. 2013)) (rejecting claim that admission of hearsay statements violated Griffin's due process rights to a fair trial "[b]ecause the Supreme Court has never held that the introduction of hearsay testimony violates the Due Process Clause"); *accord Bartholomew v. Van Boening*, 420 Fed. Appx. 782, 784 (9th Cir. 2011). Second, admission of the testimony did not violate Griffin's confrontation rights under *Crawford v. Washington*, 541 U.S. 36, 54–57 (2004), because "there is no clearly established Supreme Court precedent on whether and when statements made to someone other than law enforcement personnel are testimonial," and thus there is no clearly established Supreme Court precedent holding that an excited utterance made to a civilian, such as Nailing's statements to Griffin, violates the confrontation clause. *Bartholomew*, 420 Fed. Appx. at 784; *see also Woods v. Cook*, 960 F.3d 295, 300 (6th Cir. 2020)

(acknowledging lack of Supreme Court precedent holding that admission of a dying declaration violates confrontation rights). And moreover, the most analogous Supreme Court precedent suggests that Nailing's statements were not testimonial because his primary purpose in making them was to stop Griffin from shooting him, not to create an out-of-court substitute for trial testimony. *See Williams v. Illinois*, 567 U.S. 50, 83 (2012) (citing *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)) ("[A] person who makes a statement to resolve an ongoing emergency is not acting like a trial witness because the declarant's purpose is not to provide a solemn declaration for use at trial, but to bring an end to an ongoing threat").

Furthermore, any alleged error in the admission of the testimony was harmless, considering the overwhelming additional evidence of Griffin's guilt: that he brought a gun to the apartment; that he and Nailing were tussling; that Nailing was shot in the neck from the front and at a downward angle; that Griffin's explanation of the shooting was not credible; that Griffin was holding the gun immediately after the shooting; and that Griffin left the apartment and disposed of the gun. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Hayes v. Carter*, No. 98-C-6813, 2003 WL 21212598, at *14 (N.D. Ill. May 23, 2003).

For all these reasons, Griffin cannot satisfy the standards of § 2243 or § 2254(a). *See Toliver*, 688 F.3d at 859; *Aleman*, 320 F.3d at 690. Griffin's claim thus lacks merit.

### F.        Claim 13—Denial of Griffin's successive postconviction petition

The trial court denied Griffin's motion for leave to file a successive postconviction petition, finding that the motion failed to meet the cause and prejudice test for a successive petition under 725 ILCS 5/122-1(f). (Dkt. No. 45-2 at 136; Dkt. No. 45-3 at 9.) The Illinois Appellate Court affirmed the decision. *Griffin*, No. 1-16-2347. (Dkt. No. 45-1.)

Griffin argues that the trial judge erred by denying his motion orally instead of in writing, finding that Griffin failed to show cause and prejudice under 5/122-1(f), and failing to accept the assertions in his accompanying affidavit as true. But "[n]o constitutional provision or federal law entitles [a petitioner] to any state collateral review." *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)). "Unless state collateral review violates some independent constitutional right, such as the Equal Protection Clause . . . errors in state collateral review cannot form the basis for federal habeas corpus relief." *Id.* (delay in state court's resolution of postconviction petition did not violate Due Process Clause); *accord Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997).

Griffin's passing reference to his due process rights having been violated (*see* Dkt. No. 43 at 10) does not make his claim cognizable on federal habeas review. "[Griffin] cannot 'transform a state-law issue' regarding alleged errors in his post-conviction proceedings 'into a federal one merely by asserting a violation of due process.'" *Shief v. Lashbrook*, No. 17-cv-4570, 2019 WL 1773357, at *3 (N.D. Ill. Apr. 23, 2019) (quoting *Mishler v. Superintendent*, No. 3:14-CV-1953-JVB, 2016 WL 1658672, at *5 (N.D. Ind. Apr. 26, 2016) (denying as not cognizable petitioner's claim that state "post-conviction court . . . failed to enter written findings of facts and conclusions of law," even though petitioner "included the words 'due process'" in his petition)); *see also United States ex rel. Topps v. Chandler*, No. 12-CV-3028, 2013 WL 1283812, at *7 (N.D. Ill. Mar. 26, 2013) (claimed error by state court in finding petitioner failed to meet Illinois's cause and prejudice standard for filing a successive post-conviction petition was not cognizable); *United States ex rel. Greer v. Winters*, No. 04-C-1793, 2004 WL 2064400, at *3 (N.D. Ill. Sept. 13, 2004) (denying claim that post-conviction court "failed to accept the facts contained in the petition and the accompanying affidavits and medical records as true" because "[t]his claim is not cognizable").

Griffin's challenge to the trial court's denial of his motion for leave to file a successive postconviction petition therefore fails.

### III.      Prosecutorial misconduct (Claims 10, 11, 15, 16, and 17)

Griffin raises several claims of prosecutorial misconduct, all of which lack merit.

### A.      Claim 10—Alcorn's drug use and Griffin's booking photos

At trial, Griffin claimed that the state failed to disclose certain evidence in violation of *Brady,* 373 U.S. at 87–88 (suppression by the prosecution of evidence favorable to an accused violates due process)—specifically, the state failed to disclose the content of a conversation that the prosecutor had with Alcorn in which she admitted having used drugs in the past and four color booking photos of Griffin that showed he had no injuries.

In denying Griffin's first postconviction petition, the trial court rejected the claim concerning Alcorn's drug use on the merits but did not address the claim concerning the booking photos. (Dkt. No. 19-21 at 119–21.) Accordingly, this Court addresses the former claim under the AEDPA standard of 28 U.S.C. § 2254(d), and the latter claim under the pre-AEDPA law-and-justice standard of § 2243. *See Toliver,* 688 F.3d at 859; *see also Aleman,* 320 F.3d at 690.

> To warrant a finding of a *Brady* violation, a defendant must point to specific evidence that was (1) favorable to the defense; (2) suppressed by the government; and (3) "material to an issue at trial." *United States v. Shields,* 789 F.3d 733, 746 (7th Cir. 2015) (quotation marks omitted).

> Evidence is favorable to the defense when it is either exculpatory or could be used for purposes of impeachment. *Kyles v. Whitley,* 514 U.S. 419, 433 (1995). . . . .

> "Evidence is suppressed when 'the prosecution fail[s] to disclose the evidence in time for the defendant to make use of it' and 'the evidence was not otherwise available to the defendant through the exercise of reasonable diligence.'" *Shields,* 789 F.3d at 746–47 (quoting *Ienco v. Angarone,* 429 F.3d 680, 683 (7th Cir. 2005)).

> A mid-trial disclosure "suffices if time remains for the defendant to make effective use of the exculpatory material." *United States v. Higgins*, 75 F.3d 332, 335 (7th Cir. 1996); *see also Bielanski v. County of Kane*, 550 F.3d 632, 645 (7th Cir. 2008) ("Even late disclosure does not constitute a *Brady* violation unless the defendant is unable to make effective use of the evidence.").

*United States v. Lawson*, 810 F.3d 1032, 1042–43 (7th Cir. 2016). Griffin cannot show that the state court misapplied *Brady* when considering either Alcorn's drug use, § 2254(d), or Griffin's booking photos. § 2243; § 2254(a).

### 1.    Alcorn's drug use

At trial, Griffin conceded that he knew about Alcorn's drug use before he became aware of the prosecutor's conversation with Alcorn, showing that the information was not suppressed by the state. *See Shields*, 789 F.3d at 746–47. Even if Griffin had become aware of the information during trial, he was able to make use of it. *See Higgins*, 75 F.3d at 335; *see also Bielanski*, 550 F.3d at 645. Griffin cross-examined Alcorn extensively about her drug use (including on the day of the shooting) and highlighted Alcorn's drug use in closing argument. (Dkt. No. 19-6 at 31–34, 57–65, 139.) The trial judge, while ultimately finding Alcorn credible, noted that Griffin had cross-examined Alcorn about her drug use at great length. (Dkt. No. 19-7 at 169–71.) For these reasons, the state court applied *Brady* correctly in finding that Griffin's claim lacked merit.

### 2.    Griffin's booking photos

Although Griffin objected when the prosecutor first sought to introduce the booking photos, later, during the state's rebuttal case, Griffin stipulated to the admission of the photos. The state's use of the photos did not violate Griffin's rights under *Brady* because the photos were not favorable to him; they showed a lack of injuries to Griffin and thus undermined his assertion that Nailing had attacked him and beat him. *See Whitley*, 514 U.S. at 433; *Shields*, 789 F.3d at 746. Thus, Griffin's *Brady* claim concerning the booking photos also fails.

### B. Claim 11—Prosecutor's argument that Griffin shot Nailing

In response to Griffin's motion for a directed verdict, in which he argued the shooting was an accident and that the state failed to prove Griffin pointed a gun at anyone or intended to shoot Nailing, the prosecutor argued, among other things: "The testimony is clear [Griffin] armed himself, they were tugging on each other's shirts, and he decides to shoot [Nailing] through the throat. We have met our burden and ask you to deny the motion." (Dkt. No. 19-7 at 22.) The trial court denied Griffin's motion for a directed verdict and, in denying Griffin's first postconviction petition, rejected his claim that the prosecutor's argument denied him a fair trial; the trial judge concluded that the argument was a fair and reasonable inference from the evidence. (Dkt. No. 19-21 at 121–22.) The Illinois Appellate Court affirmed the denial of Griffin's first postconviction petition summarily. *Griffin*, 2014 Il App (1st) 130362-U. (Dkt. 19-25.) This Court thus looks to the trial court's rationale. *Wilson*, 138 S. Ct. at 1192.

Although a prosecutor is prohibited from arguing facts not in evidence, a prosecutor may argue reasonable inferences from the evidence. *See Evans v. Jones*, 996 F.3d 766, 775 (7th Cir. 2021) (citing *United States v. Waldemer*, 50 F.3d 1379, 1383 (7th Cir. 1995)). Here, the state adduced evidence that Griffin brought a gun to the apartment; that he and Nailing were tussling; that Nailing pleaded for his life immediately before he was shot; that Nailing was shot in the neck from the front and at a downward angle; that Griffin was holding the gun immediately after the shooting; and that Griffin left the apartment and disposed of the gun. Simply put, the evidence supported the prosecutor's suggestion that the shooting was intentional rather than accidental. Accordingly, Griffin cannot show that the trial court unreasonably applied federal law or unreasonably determined the facts in light of the evidence at trial. His claim thus fails.

C.     **Claim 15—Police report concerning Ryan's and Alcorn's statements**

Griffin argues, as he did in his motion for leave to file a successive postconviction petition, that the state violated *Brady* by failing to turn over a police report showing that, in April of 2004, neither Ryan nor Alcorn told the police that Nailing had pleaded for his life before he was shot—information that Griffin believes he could have used for impeachment purposes. The trial court denied Griffin leave to file a successive petition, concluding he had failed to show cause and prejudice as required by 725 ILCS 5/122-1(f). Griffin procedurally defaulted this claim because the state court, in denying him leave to file a successive petition, relied on an adequate and independent state procedural ground to dispose of the case. *Thomas*, 822 F.3d at 385; *Woods*, 589 F.3d at 376-77; *Chapman v. Jones*, No. 17-C-9190, 2020 WL 3892986, at *7 (N.D. Ill. July 10, 2020). Griffin makes no argument that his default should be excused.[8] *See Thomas*, 822 F.3d at 386. And in any event, his claim lacks merit.

In support of his motion for leave to file a successive postconviction petition, Griffin submitted a one-page excerpt from a police report relating Ryan's and Alcorn's accounts of the shooting (although the names of the witnesses are redacted in the excerpt, it is clear from a comparison with the trial testimony that the witnesses were Ryan and Alcorn). (Dkt. No. 45-2 at 107). Griffin points to no evidence that defense counsel lacked access to the report but, for reasons explained below, Griffin's claim fails in any event. The report, which presented the witnesses' accounts only "in essence and not verbatim," did not relate whether Ryan or Alcorn said they heard Nailing plead for his life, but Ryan was reported as having said that Griffin and Nailing "continued

---

[8] To the extent Griffin argues that the trial court erred in finding that he failed to show cause and prejudice as required to allow him to proceed with his successive postconviction petition (Dkt. No. 43 at 10), "[t]his is an argument that the state court's decision was wrong, not an argument to excuse the default. Such an argument cannot establish cause." *United States ex rel. Watson v. Pfister*, No. 13-C-2276, 2015 WL 1186795, at *6 (N.D. Ill. Mar. 11, 2015).

to argue" before Nailing was shot. (Dkt. No. 45-2 at 107.) Moreover, four months after the shooting, in August of 2004, Ryan and Alcorn gave additional statements to the police, which included assertions that Nailing had pleaded for his life before he was shot. (Dkt. No. 49 at 68, 73.)

Evidence is material under *Brady* if "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Sims v. Hyatte*, 914 F.3d 1078, 1087 (7th Cir. 2019) (citing *Kyles*, 514 U.S. at 433). A "reasonable probability" exists if the suppression of the favorable evidence "undermines confidence in the outcome of the trial." *Id.* If the withheld evidence is impeachment evidence of a state witness, "courts must consider the overall strength of the prosecution case, the importance of the particular witness's credibility to the prosecution case, the strength of the concealed impeachment material, and how the concealed material compares to other attacks the defense was able to make on the witness's credibility." *Sims*, 914 F.3d at 1089.

The state's case was strong even apart from Nailing's pleas for Griffin not to shoot him, as the evidence showed that Griffin brought a gun to the apartment and threatened Ryan with it; that Nailing tried to make peace between Griffin and Ryan; that Nailing was shot in the neck from the front, in a downward direction; that Griffin was holding the gun shortly after the shooting; and that Griffin disposed of the gun soon after the incident. To be sure, Ryan's and Alcorn's credibility were important, but the police report carried minimal impeachment power—it contained no statements contradicting Ryan's or Alcorn's trial testimony that Nailing pleaded for his life; it contained a disclaimer that it did not represent the witnesses' statements verbatim but reflected them only "in essence;" Ryan was recorded as having said that Griffin and Nailing "continued arguing" before Nailing was shot; and additional statements that Ryan and Alcorn made to the

police only four months after the shooting included assertions that Nailing pleaded for his life. Compared to Alcorn's admitted drug use, which defense counsel exploited at length in attacking Alcorn's credibility, and compared to defense counsel's challenges to Ryan's credibility concerning her altercation with Griffin and whether she closed the door to her bedroom where she had retreated, the police report could have had only slight effect, if any. In short, this Court cannot say that "there is a reasonable probability that, had the [police report] been disclosed, the result of the proceeding would have been different." *Sims*, 914 F.3d at 1087. This claim therefore fails as well.

### D. Claim 16—Police testimony concerning Ryan's and Alcorn's statements

Griffin claims, as he did in his motion for leave to file a successive postconviction petition, that the state, in violation of his due process rights, introduced false testimony from Officers Stegmiller and Seinitz that Ryan and Alcorn told the officers that Nailing pleaded for his life. Griffin procedurally defaulted this claim because the trial court denied him leave to file a successive postconviction petition under 725 ILCS 5/122-1(f), which constitutes an adequate and independent state procedural ground to dispose of the case. *Thomas*, 822 F.3d at 385; *Woods*, 589 F.3d at 376–77; *Chapman*, 2020 WL 3892986, at *7. Griffin asserts no reason to excuse his default, *Thomas*, 822 F.3d at 386, and, regardless, the claim lacks merit.

Stegmiller did not testify at trial about the substance of his conversation with Ryan, nor did he testify that he spoke with Alcorn, and Seinitz did not testify at trial. Accordingly, Griffin's claim is contradicted by the record. Because neither officer testified to anything that Ryan or Alcorn said, Griffin's assertion that the officers have "a background history of committing perjury" (Dkt. No. 43 at 20), is irrelevant to his claim.

Griffin's passing reference to "possible grand jury testimonies" (Dkt. No. 43 at 16), is equally unavailing because he points to no pertinent grand jury testimony in the record, and even if Officers Stegmiller and Seinitz had testified before the grand jury about what Ryan and Alcorn allegedly told them (as Griffin implies), such testimony would have been harmless because it was not repeated at trial, where Griffin was convicted beyond a reasonable doubt. *See United States ex rel. Quesada v. Atchison*, No. 12-C-8264, 2014 WL 4668644, at *5 (N.D. Ill. Sept. 18, 2014), citing *United States v. Mechanik*, 475 U.S. 66, 70 (1986); *United States ex rel. Coleman v. Shaw*, No. 06-C-184, 2009 WL 1904370, at *11 (N.D. Ill. July 1, 2009). Griffin's arguments here lack merit as well.

### E.    Claim 17—Nailing's medical records

Griffin argues, as he did in his motion for leave to file a successive postconviction petition, that the state, in violation of *Brady*, failed to disclose that Nailing was not in a coma from June 1, 2004 until his death on July 22, 2004. He contends this information meant that Nailing was available for an interview by the police and, had Griffin known it, would have caused Griffin not to stipulate that Nailing was in a coma or stipulate to the pathology report. However, Griffin procedurally defaulted this claim because the trial court denied him leave to file a successive postconviction petition under 725 ILCS 5/122-1(f), *Thomas*, 822 F.3d at 385; *Woods*, 589 F.3d at 376-77; *Chapman*, 2020 WL 3892986, at *7, and Griffin asserts no reason to excuse his default. *Thomas*, 822 F.3d at 386. In any event, the claim lacks merit.

Although Nailing's medical records (which Griffin obtained through a request under the Freedom of Information Act) indicate that Nailing was not in a coma during the period in question, Griffin failed to show that the state knew that information and failed to disclose it, or that the information was not otherwise independently available to Griffin before trial. *Shields*, 789 F.3d at

746-47. Nor can Griffin show that "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Sims*, 914 F.3d at 1087. Even if Nailing had been available for a police interview while hospitalized, Griffin provides no basis for concluding that Nailing would have provided information beneficial to Griffin—*i.e.*, there is no reason to believe that, had he known of Nailing's medical information, the result of the proceeding would have been different. Nor does Griffin make any argument that Nailing's medical records contradict or otherwise undermine the pathologist's conclusions that Nailing died from sepsis and that the manner of death was homicide. For these reasons, Griffin's claim fails.

### IV. Ineffective assistance of counsel (Claims 4, 9(a) and (b), 12(b) and (c), 14, and 18)

Griffin argues that trial and appellate counsel were constitutionally ineffective in various ways. The clearly established federal law governing Griffin's ineffective assistance claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 (1984). Under *Strickland*, Griffin must show both (1) counsel's performance "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Failure to prove either prong is fatal to Griffin's claim. *Winfield v. Dorethy*, 956 F.3d 442, 452 (7th Cir. 2020). As Griffin cannot show that the state courts misapplied the *Strickland* standard, none of his claims based on ineffective assistance of counsel are availing.

#### A. Claims 4, 12(b) and (c)—Sufficiency of the evidence

Griffin claims, as he did in his first postconviction petition, that appellate counsel was ineffective for failing to argue on direct appeal that the state's evidence was insufficient to prove

first-degree murder and for failing to argue ineffectiveness of trial counsel.[9] As explained above, however, the evidence was sufficient to prove Griffin's guilt. Thus, neither appellate nor trial counsel could have rendered constitutionally ineffective assistance concerning challenges to the sufficiency to the state's evidence. The Seventh Circuit has long held that "[c]ounsel is not ineffective for failing to raise meritless claims." *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013); *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel."). Accordingly, Griffin cannot show that the trial court misapplied *Strickland*.

### B.      Claims 9(a) and (b)—Out-of-court statements of Griffin and Nailing

Griffin argues, as he did in his first postconviction petition that: (a) trial counsel was ineffective for failing to challenge, through a contemporaneous objection or in Griffin's motion for a new trial, the admission of Ryan's testimony that Griffin threatened her, and the admission of Ryan's and Alcorn's testimony that Nailing pleaded for his life before he was shot; and (b) that appellate counsel was ineffective for failing to argue ineffectiveness of trial counsel in these respects. But as explained above, the testimony was properly admitted. Thus, neither trial nor appellate counsel could have rendered constitutionally ineffective assistance in declining to challenge the admission of the testimony. *Warren*, 712 F.3d at 1104; *Stone*, 86 F.3d at 717. Griffin thus cannot show that the trial court misapplied *Strickland* in this respect either.

### C.      Claim 14—*Finley* motion concerning successive postconviction petition

Griffin argues appellate counsel was ineffective for filing a *Finley* motion concerning Griffin's appeal from the denial of his request for leave to file a successive postconviction petition

---

[9] Griffin does not explain in what respect appellate counsel should have argued ineffectiveness of trial counsel concerning the sufficiency of the state's evidence. (Dkt. No. 43 at 5.) In any event, for the reasons explained below, the evidence was sufficient to prove Griffin's guilt, and so any ineffectiveness claims concerning challenges to the sufficiency of the evidence lack merit.

because counsel acknowledged the existence of newly-discovered evidence that Nailing was not in a coma but declined to raise it on appeal and because counsel had a conflict of interest because the same counsel had earlier filed a *Finley* motion concerning Griffin's appeal from the denial of his first postconviction petition.

"The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). There is no "constitutional right to counsel on appeal from the state habeas trial court judgment." *Coleman v. Thompson*, 501 U.S. 722, 755 (1991); *see also Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017). Thus, Griffin's claims of ineffective assistance of post-conviction appellate counsel are not cognizable. *See United States ex rel. Payton v. Pfister*, No. 11-C-6610, 2015 WL 5829749, at *15 (N.D. Ill. Oct. 1, 2015) (rejecting claim of ineffectiveness based on appellate counsel's filing a *Finley* brief); *United States ex rel. Keller v. Gilmore*, No. 96-C-5405, 1997 WL 112822, at *8 (N.D. Ill. Mar. 10, 1997) ("because [petitioner] had no right to counsel in his post-conviction proceedings, there could not have been any ineffective assistance by the counsel he was appointed, and his conflict of interest claim must fail"). Griffin's claims are therefore foreclosed from habeas review.

### D.    Claim 18—Police report and medical records

In his motion for leave to file a successive postconviction petition, Griffin argued ineffective assistance of trial counsel based on failure to discover the police report showing that, in April of 2004, neither Ryan nor Alcorn told the police that Nailing pleaded for his life before he was shot; failure to discover the medical records showing Nailing was not in a coma; and stipulating to the pathology report. Griffin, however, procedurally defaulted these claims because the trial court denied him leave to file a successive postconviction petition under 725 ILCS 5/122-

1(f), which, as noted above, constituted an adequate and independent state procedural ground to dispose of the case. *Thomas*, 822 F.3d at 385; *Woods*, 589 F.3d at 376–77; *Chapman*, 2020 WL 3892986, at *7. Griffin asserts no reason to excuse his default, *Thomas*, 822 F.3d at 386, and, regardless, the claim lacks merit for the reasons discussed above.

## V. Request for the appointment of counsel

In connection with Griffin's request that this Court lift the stay of his habeas petition to allow him to file an amended habeas petition, Griffin moved for the appointment of counsel. (Dkt. 31.) The Court denied the motion for the appointment of counsel without prejudice. (Dkt. No. 33.) Griffin does not appear to have filed a renewed request for counsel but, along with his reply brief, he filed a "notification" claiming that this Court has yet to rule on his earlier motion for representation. (Dkt. No. 49 at 1.) But the Court has already ruled on that motion, denying it without prejudice on March 10, 2020. (Dkt. No. 33.) To the extent Griffin's "notification" represents a renewal of his motion for the appointment of counsel, that renewed motion is denied because, as discussed above, none of his claims has merit.

## CONCLUSION

For the reasons discussed above, Griffin's amended habeas corpus petition (Dkt. No. 43) is denied. The Clerk will enter Judgment in favor of Respondent. The Court declines to issue a certificate of appealability, as Griffin cannot make a substantial showing of the denial of a constitutional right or that reasonable jurists would debate, much less disagree with, this Court's resolution of Griffin's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (*citing* 28 U.S.C. § 2253(c)(2)); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Griffin is advised that this is a final decision ending his case in this Court. If he wishes to appeal, he must file a notice of appeal in this Court within 30 days of entry of the judgment. *See* Fed. R. App. P.

4(a)(1). Griffin does not need to file a motion to reconsider this Court's ruling to preserve his appellate rights. But if he wants this Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). The deadline for filing a Rule 59(e) motion is 28 days after entry of this judgment. *See* Fed. R. Civ. P. 59(e). If Griffin timely files a Rule 59(e) motion, the 30-day period for filing an appeal is suspended (does not begin to run) until entry of the Court's ruling on the motion. *See* Fed. R. App. P. 4(a)(4)(A)(iv). The rules are different for a Rule 60(b) motion. The deadline for filing a Rule 60(b) motion is "within a reasonable time" and, if Griffin files a motion under Rule 60(b)(1), (2), or (3), he must file it no more than one year after entry of the judgment. *See* Fed. R. Civ. P. 60(c)(1). If Griffin files a Rule 60(b) motion within 28 days of entry of the judgment, the 30-day period for filing an appeal is suspended (does not begin to run) until entry of the Court's ruling on the motion. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The deadline for filing a motion under either Rule 59(e) or 60(b) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

ENTERED:

_____
Andrea R. Wood
United States District Judge

Date: January 23, 2023